UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW SCOFIELD,

        Plaintiff,

v.

        Civil Case No. 19-10039
        Honorable Linda V. Parker

THE CITY OF DETROIT,
DEANDRE WILLIAMS,
and REUBIN YESRAEL,

        Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff filed this lawsuit on January 4, 2019, alleging that Defendants violated his Fourth and Fourteenth Amendment rights when City of Detroit police officers Deandre Williams and Reubin Yesrael conducted a traffic stop, temporarily detained Plaintiff, and searched his car without probable cause. Presently pending before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 17.) The motion has been fully briefed. (ECF Nos. 19, 23.) For the reasons that follow, the Court is granting in part and denying in part Defendants' motion.

I.   **Summary Judgment Standard**

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court generally must accept

as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## II. Factual and Procedural Background

On April 23, 2018, at approximately 9:00 p.m., Officers Williams and Yesrael were stopped at a stop sign in their patrol car. (ECF No. 1 at Pg ID 21.) The officers were facing northbound at the intersection of Kiplinger Street and Seven Mile Road in Detroit. (*Id*.) The Plaintiff was driving westbound on Seven Mile Road in a red GMC Yukon. A female friend was sitting in the passenger seat.

Officer Williams testified that as Plaintiff drove by the patrol car, he observed Plaintiff leaning forward in the vehicle as if he were trying to see out of the windshield. (*Id*. at Pg ID 24.) Officer Williams stated that as Plaintiff leaned forward, he observed that Plaintiff was not wearing a seatbelt. (*Id.*) Officer Williams informed Officer Yesrael about the alleged seatbelt violation and initiated a traffic stop. (*Id.* at Pg ID 25, 52.) Plaintiff pulled his vehicle to the shoulder of the roadway. The events were captured on Officer Williams' dashboard camera video ("dash camera").

Officer Williams approached the driver's side and Officer Yesrael approached the passenger's side of Plaintiff's vehicle. (*Id*. at Pg ID 24.) Officer Williams testified that when Plaintiff opened the window, he smelled burnt marijuana and smoke came out the window. (*Id*.) Officer Williams then asked

3

Plaintiff to step out of the vehicle, handcuffed Plaintiff, and told him to stand in front of the police car. (*Id.* at Pg ID 24.) Officer Yesrael ordered the passenger out of the car and searched it. (*Id.* at Pg ID 44.) He located a handgun, a sack of marijuana, and pills in a knotted plastic baggie. (*Id.*) Officer Williams then arrested Plaintiff for carrying a concealed weapon and controlled substance violations.

Plaintiff was charged with carrying a concealed weapon and various drug related offenses. (ECF No. 19-8.) On July 26, 2018, Wayne County Circuit Court Judge Lydia Adams held a preliminary examination on the charges. After hearing testimony from Officers Williams and Yesrael and reviewing the dash camera video of the stop, Judge Adams held that the officers did not have probable cause for the stop. (ECF No. 1 at Pg ID 79-80.) Judge Adams concluded that the officers could not have observed the seatbelt violation. (ECF No. 1 at Pg ID 79-80.) The charges against Plaintiff were dropped.

On October 15, 2018, Plaintiff filed a complaint against Defendants in state court. In Count I of the Complaint—the only count—Plaintiff claims violations of his Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983. (ECF No. 1 at Pg ID 9.) Defendants removed the matter to federal court on January 4, 2019 under 28 U.S.C. § 1441, at which time it was assigned to the Honorable Avern Cohn. (ECF No. 1 at Pg ID 1.) Defendants then filed the pending motion for

4

summary judgment on November 5, 2019. Plaintiff filed a response (ECF No. 19), and Defendants filed a reply (ECF No. 23). The matter subsequently was reassigned to this Court.

### III.  Applicable Law and Analysis

#### A.  The Fourth Amendment

Defendants argue that Plaintiff cannot establish a cause of action for unreasonable search and seizure under the Fourth Amendment because the officers had probable cause to stop Plaintiff's car. An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment. *United States v. Blair,* 524 F.3d 740, 748 (6th Cir.2008) (citations and internal quotation marks omitted). It is well established that a police officer lawfully may stop a car when the officer has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime. *Id.* at 748.

Defendants assert two arguments in support of their claim that the officers had probable cause to stop Plaintiffs. First, that the dash camera video, on which the state court relied to determine no probable cause existed, is not dispositive in this case. Next, that even if there was no seatbelt violation, the officers had an independent reason for the stop because the windows of Plaintiff's vehicles were tinted in violation of Michigan law, Michigan Compiled Laws § 257.709.

5

As to Defendants' first argument, because collateral estoppel does not apply, Defendants argue they are entitled to a fresh review of whether the officers had probable cause to effectuate the stop. Moreover, Defendants argue, this Court should defer to Officer Williams' testimony and set aside the dash camera video because a real time eyewitness account is more accurate.

First, the Court agrees with Defendants that it is not bound by the state court's holding that the officers did not have probable cause. Plaintiff also agrees. (*See* ECF No. 19 at Pg ID 228.) Defendants did not have an opportunity to litigate this issue in the prior state court case, so collateral estoppel does not apply. *See Spencer v. Cty. of Huron*, 717 F. App'x 555, 558 (6th Cir. 2017). Accordingly, Defendants are entitled to a fresh review of the probable cause question.

Even still, the Court agrees with the state court judge that probable cause was lacking—or at least that there is a question of fact for the jury in this civil case. The state court judge, after watching the dash camera video, found "incredible" Officer Williams' testimony that he could see inside Plaintiff's vehicle. (ECF No. 1 at Pg ID 80.) Judge Adams stated, "I just could not see anything in that car from the video. I could not see anything. It was going so fast, and it was dark. And, the windows you just couldn't see, I couldn't even see [Plaintiff] in the car." (*Id.* at Pg ID 79.) Having reviewed the video, this Court finds Judge Adams' assessment completely accurate.

6

Plaintiff's testimony further undermines Officer Williams' assertion that he observed Plaintiff not wearing a seatbelt. Plaintiff testified that he was wearing a seatbelt in his car before the stop and that he "always" wears one when driving. (ECF No. 15-1 at Pg ID 169.) Defendants do not contest this; and in their motion, they say that for purposes of the motion they "accept the Plaintiff's version of events." (ECF No. 17 at Pg ID 202.)

Turning to Defendants' next argument, Defendants suggest that Officer Williams' testimony is more probative than the dash camera video. Specifically, Defendants say, a video might not pick up all the details that a person who is observing a situation in real time might. The Court is not inclined to accept this argument. *See Scott v. Harris*, 550 U.S. 372, 372 (2007) ("When testimony conflicts with video evidence, it is proper to defer to video evidence."); *Rudlaff v. Gillispie*, 791 F.3d 638, 645 n.1 (6th Cir. 2015) (when testimony contradicts video evidence the court "need not" accept the testimony as true). Moreover, it is the jury's role to decide which evidence is more credible and persuasive and to resolve factual disputes. *See Liberty Lobby*, 477 U.S. at 255.

Defendants alternatively argue that the officers had a separate basis for stopping Plaintiff because his windows were tinted in violation of state law. During Plaintiff's deposition in this matter on September 26, 2019, he testified that the Yukon's windows were tinted. (ECF No. 15-1 at Pg ID 169.) However,

7

Defendants' reliance on this fact comes far too late. Defendants may not present a new theory now for why the officers stopped Plaintiff.

During his testimony at the state court preliminary examination proceeding, Officer Williams did not mention the vehicle's tinted windows as a reason for executing the traffic stop. (*See* ECF No. 19-2 at Pg ID 245-46.) Rather, Officer Williams indicated that the "only reason" he stopped Plaintiff was because he observed Plaintiff not wearing a seatbelt. (*Id.* at Pg ID 258.) Officer Williams confirmed the reason for the stop during his September 25, 2019 deposition in this matter. (ECF No. 19-3 at Pg ID 269.) When asked if the windows of the Yukon were tinted, Officer Williams testified that he could not recall. (*Id.*)

The existence of probable cause is based on the facts known by the officer at the time of the challenged conduct. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). "[P]olice officers may not look for after-the-fact justifications for stops which would otherwise be impermissible[.]" *United States v. Hughes*, 606 F.3d 311, 316 (6th Cir. 2010) If an officer testifies at a suppression hearing that he in fact did not see the traffic violation or did not have probable cause to believe a violation had occurred, but only discovered after the stop or the arrest that the suspect had committed a traffic violation, a court could not find that probable cause existed. *Id.* at 316-17. Such a stop would be unreasonable under the Fourth Amendment. *Id.* Therefore, the

8

Court will not consider Defendants' belated claim that the officers had probable cause to stop Plaintiff due to the Yukon's tinted windows.

Finally, Defendants mount a "reasonable mistake of fact" defense in their reply brief. In support of the defense, Defendants rely on *Heien v. North Carolina*, 574 U.S. 54 (2014). This defense is grounded in the Fourth Amendment's reasonableness standard and provides that an officer may successfully defend against a constitutional violation if the officer made a reasonable mistake of law or fact that would render his challenged action reasonable. *See id.* at 60-61. As the Court stated: "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)).

In *Heien*, an officer conducted a traffic stop believing the driver's single broken taillight to be in violation of state law. The officer was incorrect on the law, which only required one functioning taillight. Accordingly, the stop was conducted without probable cause contrary to the Fourth Amendment. The Supreme Court nevertheless concluded that the officer's mistake of law was reasonable and, therefore, there was no Fourth Amendment violation. *Id.* at 67.

To find *Heien* applicable, however, this Court would need to first conclude that Officer Williams made an actual mistake. In other words, assuming that

9

Plaintiff was wearing his seatbelt as he claims, did Officer Williams mistakenly conclude otherwise *or* did he make up the alleged citation as a basis to stop Plaintiff. Unfortunately, the latter scenario is not implausible. Moreover, the dash camera video suggests that it would have been nearly impossible for the officers to have seen inside Plaintiff's car and make this observation. Further, deciding which scenario should be believed requires a credibility determination which, again, is one left for the trier of fact. Therefore, Defendants are not entitled to summary judgment based on this defense.

    **B.    The Fourteenth Amendment**

Plaintiff also claims his Fourteenth Amendment rights were violated because his race was one of the motivating factors behind the officers' decision to stop him. (ECF No. 1 at Pg ID 9.) Plaintiff does not provide any argument or evidence to support this claim in response to Defendants' summary judgment motion. Therefore, Defendants are entitled to summary judgment on this claim. *See First Nat. Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968) (explaining that a party cannot rest on allegations contained in his complaint in opposition to properly supported summary judgment motion made against him); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Moreover, Plaintiff has not alleged any basis for a due process claim independent of his Fourth Amendment claim. It is well-established that the Fourth

Amendment provides the proper analytical framework for evaluating an unreasonable seizure claim, not the Fourteenth Amendment. *See Conn v. Gabbert*, 526 U.S. 286, 293 (1999)(quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) ("[W]here another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of 'substantive due process.'"); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) ("Substantive due process analysis is ... inappropriate ... [where a] claim is 'covered by' the Fourth Amendment."). Consequently, Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment claim.

### C. Qualified Immunity

Defendants argue that even if a constitutional violation occurred, the officers are entitled to qualified immunity. According to the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). There are two inquiries relevant to deciding whether a defendant is entitled to qualified immunity: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right

11

was clearly established. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005).

Officer Williams and Yesrael both claim qualified immunity. The actions of each of them must be considered separately, because "[e]ach defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir.2010). Moreover, while the qualified immunity inquiry turns upon the "objective (albeit fact-specific) question whether a reasonable officer could have believed [his actions] to be lawful… in light of clearly established law," this objective standard must be applied by reference to the information that each individual defendant officer possessed at the time. *Anderson v. Creighton,* 483 U.S. 635, 641 (1987).

The Court considers Officer Williams first. The first prong of qualified immunity requires the Court to determine whether there was a constitutional violation, here, whether Plaintiff's Fourth Amendment rights were violated. Pursuant to the analysis above, the Court has determined that the facts viewed in the light most favorable to Plaintiff show that a constitutional violation has occurred, or at least that there is a question of fact with respect to this element. As set forth above, the dash camera showed it was nearly impossible to see into Plaintiff's car given the time of night, how fast the car was going, and the apparent tint to Plaintiff's windows.

12

Next, the Court must consider whether the violation involved a clearly established constitutional right of which a reasonable officer would have known. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Russo v. City of Cincinnati,* 953 F.2d 1036, 1042 (6th Cir.1992). "Although it need not be the case that 'the very action in question has been previously held unlawful … in the light of pre-existing law the unlawfulness must be apparent.'" *Id.* (internal quotations omitted).

An individual has a clearly established right to be free from unreasonable searches and seizures, including traffic stops. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). The officers seized Plaintiff within the meaning of the Fourth Amendment when they pulled him over, detained him, and searched his vehicle. *Id.* Sixth Circuit precedent clearly establishes that an officer needs probable cause to conduct a traffic stop for a civil infraction. *Campbell v. Mack*, 777 F. App'x 122, 132 (6th Cir. 2019) (citing *United States v. Collaza*, 818 F.3d 247, 253-54 (6th Cir. 2016)). Accordingly, Plaintiff has met both elements sufficient to deny Officer Williams qualified immunity.

The Court next turns to Officer Yesrael, who was told by Officer Williams that Plaintiff was not wearing his seatbelt. (ECF No. 19-3 at Pg ID 269; ECF No. 19-4 at Pg ID 274.) Officer Yesrael testified that by the time Officer Williams

13

indicated that they were going to stop Plaintiff for that reason, Plaintiff's car had already passed and Officer Yesrael could not see inside. (ECF No. 19-4 at Pg ID 274.)

Officers need not provide one another with specific facts justifying an action when directing or asking for an action to be done. "'[E]ffective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information.'" *Humphrey v. Mabry*, 482 F.3d 840, 848-49 (6th Cir. 2007) (quoting *United States v. Hensley*, 469 U.S. 221, 231 (1985)). For that reason, the Supreme Court held in *Hensley* that officers can execute a stop based on reasonable suspicion that came from a police bulletin or flyer issued by other officials provided "the flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense[.]" *Id.* at 232. However, "[i]f the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment." *Id.* As discussed above, there is a question of fact as to whether Officer Williams had probable cause to stop Plaintiff's vehicle.

But even if the stop was lawful, there also is a question of fact as to whether Officer Yesrael's subsequent search of the vehicle was supported by probable

14

cause. The officers justified the search based on Officer Williams' claim that he smelled burnt marijuana when Plaintiff opened his window. Plaintiff testified, however, that he was not smoking marijuana in the car and never smokes in the car (*see* ECF No. 19-7 at Pg ID 308), and neither officer produced any evidence of burnt marijuana, embers, or a device used to smoke marijuana.

Viewing the facts in a light most favorable to Plaintiff, the Court must therefore conclude that Officer Yesrael violated Plaintiff's Fourth Amendment rights when he searched his vehicle. As discussed above, the rights at issue were clearly established when the incident occurred.

Nevertheless, this does not end the Court's inquiry because the objective inquiry as to whether a reasonable officer could have believed his actions lawful in light of clearly established law must be applied by reference to the information that the officer possessed at the time. *Anderson v. Creighton,* 483 U.S. 635, 641 (1987). Thus, where an officer unlawfully stopped an individual in reliance upon information unknowingly based on an anonymous and unverified tip, the Sixth Circuit found the officer's behavior objectively reasonable, "even in light of clearly established rights," and held that the officer was entitled to qualified immunity. *Feathers v. Aey*, 319 F.3d 843, 851 (6th Cir. 2003). The Sixth Circuit has explained that "'[a]n officer conducting a search is entitled to qualified immunity if 'a reasonable officer could have believed' that the search was lawful

15

'in light of clearly established law *and information the searching officer possessed.*'" *Hicks v. Scott*, 958 F.3d 421, 433-34 (6th Cir. 2020) (emphasis added) (quoting *Groh v. Ramirez*, 540 U.S. 551, 566 (1987) (Kennedy, J., dissenting)) (additional quotation marks and citation omitted).

As the state court judge pointed out, the dash camera shows Plaintiff's car moving quickly. It is not unreasonable that Officer Yesrael missed his opportunity to see inside Plaintiff's car in order to check for himself whether Plaintiff was wearing a seatbelt. Thus, Office Yesrael reasonably relied on Officer Williams' information when conducting the stop, and he is entitled to qualified immunity with respect to the stop.

On the other hand, as to the search, Officer Yesrael testified at Plaintiff's preliminary examination that, despite exiting the patrol car and also approaching the Yukon—albeit on the passenger side—he did not smell "burnt" marijuana, did not see any smoke coming from the vehicle, and "found no elements of any cinders or any burnt items or marijuana products" when he searched the vehicle. (ECF No. 1 at Pg ID 52, 54-55, 62.) The dash camera video reveals no smoke emanating from the vehicle. Notably, although Officer Yesrael testified that he smelled unburned marijuana when the passenger opened the car door to exit the Yukon, Plaintiff had informed the officers that he had a medical marijuana card and therefore his simple possession of marijuana would not provide probable cause for

16

the search. (*Id.* at 38.) Accordingly, the Court cannot conclude that Officer Yesrael's search was reasonable. Therefore, he is not entitled to qualified immunity based on the alleged unlawful search at this stage.

### D. City of Detroit's liability (*Monell* claim)

Plaintiff claims that Defendant City of Detroit "acquiesced, condoned, approved, and ratified the unconstitutional conduct of the Defendant police officers", and that "by its customs, policies/or parties" failed to enforce their rules pertaining to arrest and detention. (ECF No. 1, at Pg ID 10.)

Under § 1983, a municipality can be held liable when an alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't. of Social Servs.*, 436 U.S. 658, 690 (1978). For his *Monell* claim, Plaintiff must prove two elements: (1) that a constitutional violation occurred and (2) that the City is responsible for that violation. *Doe v. Claiborne Cty.*, 103 F.3d 495, 505-06 (6th Cir. 1996).

First, as set forth above, Plaintiff has plausibly alleged that a constitutional violation occurred, or that at least there is a question of fact as to this element. Next, to show that the City is responsible, Plaintiff must prove (1) the existence of a municipal policy or custom and (2) a direct causal link between the policy or custom and the alleged constitutional deprivation." *Lilly v. City of Clarksville*, 510

F. App'x 374, 376 (6th Cir. 2013).  The existence of a municipal policy or custom can be shown through: (1) the municipality's legislative enactments or official policies; (2) the ratification of illegal actions by an official with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance of acquiescence of federal violations.  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Plaintiff has not met his burden with respect to this claim.  He does not address the City's liability in his response, nor does he provide any evidence with respect to the City's liability.  Accordingly, he cannot survive summary judgment on his *Monell* claim.  *See First Nat. Bank of Ariz.*, 391 U.S. at 289; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

### IV. Conclusion

For the reasons stated, the Court holds that Defendants are entitled to summary judgment with respect to Plaintiff's Fourteenth Amendment and *Monell* claims.  Defendants have not demonstrated that they are entitled to summary judgment on Plaintiff's Fourth Amendment claim, so it will remain.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (ECF No. 17) is **GRANTED IN PART AND DENIED IN PART**.  Defendant City of

Detroit is **DISMISSED** as a party from the case.

    **IT IS SO ORDERED**.

s/ Linda V. Parker<br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: September 29, 2020